Alonzo L. Rudy, Defendant in Error, v. Chicago National Life Insurance Company and James M. Crume, Receiver, Plaintiffs in Error.

Gen. No. 8,744.

Heard in this court at the April term, 1933. Opinion filed January 12, 1934. Rehearing stricken April 3, 1934.

E. R. Elliott, for plaintiffs in error.

J. N. Moore, for defendant in error.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

Alonzo L. Rudy, the defendant in error herein, commenced this suit in the circuit court of Vermilion county against Chicago National Life Insurance Company, the plaintiff in error, and James M. Crume, as receiver of the company who had been appointed and had taken over the assets of the company previous to the suit; and was in charge of its business, finances and affairs, under the order and direction of the federal court. The suit was brought to recover the sum of $3,000 and accrued interest thereon, which the defendant in error claimed was due him as beneficiary of an insurance policy and a rider concerning permanent disability attached thereto, which policy had been issued by the plaintiff in error company to his wife, Julia E. Rudy, on July 13, 1926. The company had refused to pay, after the wife's death, on the ground that the policy had lapsed for nonpayment of the last premium, which had become due July 13, 1930, prior to the death of the insured.

The parties waived a jury trial; and entered into a stipulation concerning the facts, which was submitted to the court for consideration in determination of the

issues involved in the case. The stipulation embraces all the material matters and facts upon which defendant in error's claim is based; also the defense to a recovery by the defendant in error on the policy. The trial of the case resulted in the court's finding the issues in favor of the defendant in error; and the court's assessment of his damages at $3,037.50; and the court rendered judgment for that amount against the plaintiff in error. This writ of error is prosecuted for reversal of the judgment.

The stipulation by the parties concerned of the evidentiary facts, is as follows:

1.

"It is hereby stipulated by and between J. N. Moore, attorney for Alonzo L. Rudy, and E. R. Elliott, attorney for the Pacific States Life Insurance Company, and James M. Crume, Receiver for the Chicago National Life Insurance Company, a corporation, hereinafter referred to as the company, that the parties to this stipulation admit the truth of all the facts hereinafter set forth and admit that if witnesses were called and oral and documentary evidence offered and received in evidence, such evidence would establish the truth of every fact covered by this stipulation.

2.

"That no party to this stipulation is to be deemed, because of entering thereinto, to admit the relevancy, competency or materiality of any fact stipulated to be true; and every party to this stipulation shall have the same benefit and advantage at the argument before the court upon the trial of this cause as if such party had objected and excepted to the admission of the evidence respecting such fact.

3.

"That this stipulation shall be filed with the court and read to and considered by it as part of the evi-

dence in the case and that no further proof shall be required upon the part of any party herein stipulated to be true; provided, either party may offer cumulative evidence of such fact or relating to such fact if he may be so advised.

4.

"That the Chicago National Life Insurance Company on July 13th, 1926, for and in consideration of an annual premium of Seventy-three Dollars and Sixty-five Cents ($73.65) then and there paid by Julia E. Rudy, hereinafter called the assured, executed and delivered to the assured its policy of life insurance with Total Disability rider thereto attached, a photostatic copy of which is hereto attached, marked 'Exhibit A', and made a part of this stipulation.

5.

"That the premium on said policy was paid in full by the assured according to the terms of said policy, for four years beginning respectively July 13th, 1926, July 13th, 1927, July 13th, 1928 and July 13th, 1929.

6.

"That the annual premium which fell due July 13th, 1929, was not paid in cash when due, but on August 13th, 1929, and while said policy was in full force and effect and in the grace period thereof, assured gave the company her note for Seventy-three Dollars and Sixty-five Cents ($73.65), due November 13th, 1929. That said note was not paid when due, but the prompt payment of the same was waived by the company and the policy was continued in force by it after said date, the same as if the premium had been paid in cash or the note paid when due. A true copy of the said note is hereto attached, marked 'Exhibit B', and made a part hereof. That afterwards on the 7th day of July, 1930, assured tendered and the company accepted in full

payment of said note her check for the sum of Seventy-three Dollars and Sixty-five Cents ($73.65), which check was in due course paid in full to the company; a true copy of 'the said check is hereto attached, marked 'Exhibit C' and made a part hereof.

### 7.

"That on the 13th day of July, 1930, when the annual premium on said policy appeared to be due, the same was not paid in full in cash; but on July 31st, 1930, and while said policy was in full force and effect and during the grace period thereof, assured tendered and the company accepted the check of A. L. Rudy for Thirty-three Dollars and Sixty-five Cents ($33.65), which check was duly paid on August 7th, 1930, to the company, and at the time of the delivery of the said check, assured tendered and the company accepted as further payment on the said premium, the promissory note of the said Alonzo L. Rudy, made payable to the company in the sum of Forty Dollars ($40.00), dated July 13th, 1930, due November 13th, 1930, with interest at six per cent from date until paid. A true copy of the said check is hereto attached, marked 'Exhibit D', and made a part hereof. A true copy of said note for Forty Dollars ($40) is also hereto attached, marked 'Exhibit E', and made a part hereof.

### 8.

"That said note for Forty Dollars ($40) was not paid when due, but the maker requested an extension of time of the payment of the said note to March 13th, 1931, which extension was granted by the company, and the note was changed on its face by the company to show such extension, as will more fully appear by an examination of 'Exhibit E', a photostatic copy of the letter of the maker of said note requesting such extension is hereto attached, marked 'Exhibit X' and made

a part of this stipulation. Likewise, a photostatic copy of the letter of the company granting such extension is hereto attached marked 'Exhibit Z', and made a part of this stipulation. That said note for Forty Dollars ($40) was not paid on March 13th, 1931, and on April 14th, 1931, the company noted on its policy card, containing a history of said policy that said policy was, on said date, lapsed on the account of nonpayment of said note, which is more fully shown by a photostatic copy of said policy card hereto attached, marked 'Exhibit F', and made a part hereof.

8a.

"That relative to said Forty Dollar note, 'Exhibit E', the company wrote Julia E. Rudy on March 4th, 1931, the following letter:

" 'Julia E. Rudy,
1221 Robinson St.,
Danville, Ill.

" 'Dear Madam:

" 'This is to notify you that your note for $40.00, plus interest at 6% from July 13th, 1930, will be due on March 13th, 1931.

" 'This note was given as an extension of time for the payment of the premium on your policy #8441, and for this reason it is most essential that the matter be given your prompt attention.

" 'Kindly let us hear from you on or before the due date of the note.

Yours very truly,
CHICAGO NAT'L LIFE INS. CO.
By ————————————————
Assistant Treasurer.

HR'

"A photostatic copy of said letter is also hereto attached, marked 'Exhibit G', and made a part of this stipulation.

9.

"That no notice of the lapsing of said policy was given to the assured or the plaintiff until May 5th, 1931; that on said May 5th, 1931, the company wrote to Julia E. Rudy the following letter:

" 'Julia E. Rudy,

1221 Robinson St.,

Danville, Ill.

" 'Dear Madam:

" 'We have written you several times in regard to the payment of the premium note of $40.00, given for the extension of the premium due July 13th, 1930, on your policy #8441.

" 'We have not had the pleasure of receiving your remittance, THEREFORE YOUR POLICY HAS LAPSED ON OUR RECORDS, according to the terms of this note. You are now without this valuable protection. If you desire to reinstate this policy, kindly advise us at once and we will give the matter our prompt attention.

" 'But whether or not you wish to reinstate the policy, it is necessary that you pay the note pro rata for the time which we have held your insurance in force on this extension note.

" 'Do not delay this matter any longer, as oftentimes delays are disastrous.

" 'Thanking you for your past patronage and hoping to hear from you by return mail, we are

Yours very truly,

CHICAGO NAT'L LIFE INS. Co.

By ————————

Assistant Treasurer.

HR'

"A photostatic copy of said letter is also hereto attached, marked 'Exhibit H', and made a part of this stipulation.

9a.

"That after Exhibit H had been received by plaintiff and Julia E. Rudy, plaintiff wrote, on May 16th, 1931, to the company, the following letter:

" '1221 Robinson St.,
Danville, Ill.,
May 16–31

" 'Chicago National,
Chicago, Ill.

" 'Dear Sir:—

" 'In regard to Mrs. Julia E. Rudy Ins. on P. 8441— I wrote you a long time ago asking for a note to be filled out, that I could not pay it and I got no note, and now I am just as hard up as I was then. I got 3 days work last week the first since last Sept. but I will renew the note if you are willing.

" 'Yours truly,
A. L. Rudy'

(Going through the)
(April Statement on)
(Extended Insurance)
( )
(#8441 7–14 )

"The notation on the left hand lower corner of the said letter was made by the company.

"A photostatic copy of said letter, showing said notation in parenthesis, is hereto attached, marked 'Exhibit I', and made a part of this stipulation.

"That in answer to the letter of plaintiff marked 'Exhibit I', the company, on May 20th, 1931, answered as follows:

" 'Mr. A. L. Rudy,
1221 Robinson St.,
Danville, Ill.

" 'Dear Sir:

" 'Your letter of the 16th received and will say we are very sorry that we did not receive your previous letter.

" 'We are enclosing a reinstatement blank for your wife to fill out and sign and if you will sign this and return we will extend the note until July 13th, which is the anniversary date of this policy.

" 'Thanking you for your continued patronage, we are

" 'Yours very truly,
CHICAGO NATIONAL LIFE INS. CO.
By ————————————————
Assistant Treasurer.

REF/P
enc.'

"A photostatic copy of said letter is hereto attached, marked 'Exhibit J', and made a part of this stipulation.

"That afterwards, on June 5th, 1931, plaintiff wrote the company as follows:

" '1221 Robinson St.,
Danville, Ill.
June 5–31

" 'Chicago National Life,
Chicago, Ill.
" 'Dear Sir:—

" 'In regards to Mrs. Rudy's Policy—No. 8441—I would like to know what her premiums are that she owes up to present time.

Yours truly,
A. L. Rudy.'

"A photostatic copy of said letter is hereto attached, marked 'Exhibit K', and made a part of this stipulation.

"That afterwards, on June 14th, 1931, plaintiff wrote the company the following letter:

" 'June 14–31
1221 Robinson St.,
Danville, Ill.

" 'Chicago National Life
 Chicago, Ill.,
" 'Dear Sir:—
( " 'In regard to Mrs. Julia E. Rudy's policy)
(#8441, will say she can not sign a reinstatement)
(application blank. She has not been able to do a)
(day's work since last March a year ago, 'March)
(1930' and since I looked the policy over I find she)
(has T. D. and D. D. )

" 'Yours truly,
 A. L. Rudy'

### Policy Lapsed

"A photostatic copy of said letter, including large parenthesis and the legend, 'Policy Lapsed' made by the company on receipt of said letter, is hereto attached, marked 'Exhibit L' and made a part of this stipulation.

"That on receipt of Exhibit L, the company, by its actuary, on June 16th, 1931, wrote the plaintiff the following letter:

" 'Mr. A. L. Rudy,
 1221 Robinson St.,
 Danville, Ill.
" 'Dear Sir:—

" 'Your letter to the Chicago National Life Insurance Company has been handed over to me for reply. Policy #8441 issued on the life of

Julia E. Rudy

was lapsed for non-payment of the note due November 13, 1930.

" 'It is impossible to reinstate this policy without a reinstatement blank having been made out and submitted to this Company in the regular form, and unless Mrs. Rudy can do so the policy will lapse according to its terms.

" 'Yours very truly,
 Actuary.

JOL:HK'

"A photostatic copy of said letter, marked 'Exhibit M' is hereto attached, and made a part of this stipulation.

10.

"That answering the letter marked 'Exhibit K', the company wrote the plaintiff the following letter:

" 'June 9th, 1931.

" 'Mr. A. L. Rudy,
1221 Robinson St.,
Danville, Ill.

" 'Dear Sir:—

" 'In reply to yours of the 5th, kindly be advised that your wife's policy #8441 lapsed for non-payment of the note due November 13th, 1930.

" 'If you desire to reinstate this policy, kindly have your wife sign the enclosed reinstatement blank and return with your remittance of $42.20. If the reinstatement is approved by our Medical Department, we will reinstate the policy and forward you the note cancelled, otherwise we will return your remittance to you.

" 'Yours very truly,
CHICAGO NATIONAL LIFE INS. CO.
By R. E. Furrow,
Assistant Treasurer.

REF/P
enc.'

"A true copy of said letter is hereto attached, marked 'Exhibit N', and made a part hereof, the original letter being in the possession of the plaintiff and will be produced on the trial, if demand is made therefor.

11.

"That assured departed this life on the 31st day of March, 1932, and that any proof of death, other than already furnished by plaintiff, is waived.

12.

"That on May 18th, 1932, the said Alonzo L. Rudy, wrote and mailed to the company, the following letter:

" 'May 18–1932
1221 Robinson St.,
Danville, Ill.

" 'Chicago National Life Insurance Co.,
1400 W. Washington Blvd.,
Chicago, Ill.

" 'Gentlemen:—

" 'My wife, Julia Rudy passed away on March 31st, this year. She held a policy in your company No. 8441, for Three Thousand Dollars. Please send me your blank proof of loss so that I may get it fixed up and sent in.

" 'Yours truly,
Alonzo L. Rudy.'

"A photostatic copy of said letter is hereto attached, marked 'Exhibit O', and made a part of this stipulation.

"That upon receipt of the said letter by the company, on May 20th, 1932, the company, by one W. D. Hunnell, the manager of its claim department, wrote the plaintiff as follows:

" 'Mr. Alonzo L. Rudy,
1221 Robinson Street,
Danville, Illinois.

*Re: Julia E. Rudy, Dec'd.*

" 'Dear Mr. Rudy:—

" 'We have your letter of May 19th, reporting the death of your wife, who held policy #8441.

" 'We were very sorry to learn of your loss, and it is also with reluctance that we must inform you that this policy is lapsed and that the Extended Insurance expired on January 13th, 1932.

" 'Yours very truly,
W. D. HUNNELL,
Manager, Claim Dept.

WDH/MV'

"A true copy of said letter is hereto attached, marked 'Exhibit P', and made a part of this stipulation. The original letter is in the possession of the plaintiff, and will be produced at the trial if demanded.

### 13.

"That the Pacific States Life Insurance Company is a corporation organized and existing under and by virtue of the laws of the State of Colorado, and duly licensed to transact the business of life insurance and of accident and health insurance in the State of Illinois.

### 14.

"That on June 3rd, 1932, a certain decree was entered in the Superior Court of Cook County in case #558236, of which decree a true copy is hereto attached and made a part of this stipulation as 'Exhibit Q'. That in obedience to the decretal order therein contained, James M. Crume was appointed receiver of all the assets of every nature whatsoever and wheresoever situated belonging or in any manner pertaining to the Chicago National Life Insurance Company as shown in clause 'c' of paragraph 7 of said decree; that in obedience to the decretal order aforesaid, the Pacific States Life Insurance Company executed a re-insurance contract with the Chicago National Life Insurance Company with the approval of Leo H. Lowe, Director of the Department of Trade and Commerce of the state of Illinois; that a certified copy of the said re-insurance contract was duly filed for record in the office of the said Leo H. Lowe and by him approved and the same is now of record in said office.

### 15.

"That in obedience to said decretal order, the said James M. Crume, as receiver for the Chicago National Life Insurance Company has transferred and set over

to the Pacific States Life Insurance Company, all the assets of the Chicago National Life Insurance Company heretofore received by him as such receiver, and stands ready to transfer to the said Pacific States Life Insurance Company any and all of the assets of the Chicago National Life Insurance Company that may hereafter come into his hands as such Receiver.

### 16.

"That this stipulation shall be effective when signed by the parties hereto by their respective attorneys.

"Witness our hands in triplicate this the ———— day of September, 1932.

Attorney for A. L. Rudy.

"Attorney for James M. Crume, Receiver, Chicago National Life Insurance Company and Pacific States Life Insurance Company."

. . . . .

Two questions are presented for review under the assignment of errors, namely:

"1. Did the total and permanent disability rider attached to and forming a part of the policy exonerate Mrs. Rudy (the insured) from the payment of future premiums?"

"2. Did the payment of the cash item of $33.65; and the giving of a note for the balance of the premium due continue the insurance in force until July 13, 1931?"

Counsel for plaintiff in error make the following statements explanatory of their position in this controversy; and the questions referred to:

"If the cash payment plus the note amounted to a payment of the premium for the policy year beginning July 13, 1930 and ending July 13, 1931, there was enough extended insurance value to keep the policy in force until the time of Mrs. Rudy's death. If on the

other hand the payment of the cash and the giving of the note did not amount to a payment of the premium for the policy year in question, the automatic extended insurance was insufficient to maintain the insurance in force up to the time of her death.''

The rider concerning permanent disability which has been referred to, is as follows:

''That if, while the policy is in full force and before default in the payment of any premium thereunder, the insured shall become wholly and permanently disabled by bodily injury or by disease so as to be wholly, continuously, and permanently prevented thereby for life from engaging in any gainful occupation, and, if satisfactory proof of such disability is furnished to the company, then the company will pay the succeeding premiums under this policy as they become due during the period of such disability. The premiums to be paid by the company are in addition to other benefits offered by the policy.''

It is admitted by the plaintiff in error as a part of the evidentiary facts to be considered by the stipulation, that the daughter of the insured, Catherine Monroe, would have testified, if called as a witness, that the insured became wholly and permanently disabled from engaging in any useful occupation, about March 24, 1930; also, that the insured's physician, Dr. C. W. Allison, would have testified to the same facts. What the doctor's testimony would have been concerning this feature of the case, is set forth in the abstract as follows:

''She was totally disabled because of cancer from March 24, 1930; that I did not know until many months thereafter that her disability would be permanent. I recall that at times her condition showed improvement, but these better periods were followed by lapses into worse condition, and in the late fall or winter of 1930 I became convinced that her case was incurable, but

did not impart that information to her husband, Alonzo L. Rudy, or to the deceased for some time after I had become convinced of it myself.''

It is contended by counsel for plaintiff in error upon this feature of the case, that before the obligation of the plaintiff in error company concerning permanent disability could become effective and binding, it was necessary that the insured should have furnished the company with satisfactory proof of such permanent disability; and that she failed to do so; that the furnishing of such satisfactory proof was a condition precedent to the right of the beneficiary to recover upon the policy. It is pertinent to state on this point that the stipulated evidentiary facts disclose, however, that the company had been notified, and therefore had knowledge, of the disabled condition of the insured; and did not, at any time, express any dissatisfaction with the proof contained in the notice of the insured's disabled condition, nor require further proof of this fact. Therefore, in this connection, we will first consider the matter of permanent disability with reference to the right of recovery, namely, whether or not, under the stipulated facts, the insurance provided for, was in force at the time the permanent disability occurred. The permanent disability, under the provisions of the policy, when it occurred, absolved the insured from the payment of further premiums; and therefore, in view of this provision, the policy automatically remained in force, without further payments of premiums, until the death of the insured which occurred on March 31, 1932. As has been stated, the fifth payment of the premium provided for in the policy, became due on July 13, 1930; and was settled for by a cash payment of $33.65, and the giving of a promissory note for $40, which was made and delivered to the plaintiff in error company, by Alonzo L. Rudy, the defendant in error herein and the beneficiary of

the policy. The note, under its terms, became due November 13th following; but by mutual agreement, the time for payment was extended to March 13, 1931. The note was not paid, nor was it paid at the date to which it was extended; and remained unpaid.

It is contended by counsel for the plaintiff in error that the note cannot be regarded as a part payment. While we cannot agree with counsel in this contention, we desire to point out the fact that even though the note cannot legally be regarded as part payment, certainly the $33.65 paid in cash to the company and accepted by the company as a part payment of the premium, had the effect of extending the insurance in force for at least five months; that the insured under the provisions of the policy, after the four annual payments of premiums which had been paid, was entitled to an automatic extension of the insurance for one year and two months more (not counting the days of grace) which kept the policy in force until September 13, 1931. Surely it cannot be justly contended that the insured forfeited or waived her right of the automatically extended insurance provided for, by the cash payment made of part of the premium due on July 13, 1930. It is not questioned in the stipulation of evidentiary facts, and therefore admitted, that under the provisions of the policy, she was entitled to the right to have the insurance automatically extended, at the time the cash payment was made. It seems apparent, therefore, that, adding the automatic extension period provided for, to the extension to which she was entitled by the payment of the $33.65 cash payment, the insurance remained in force until February 13, 1932. The insured became permanently disabled in March, 1930, but did not die until March, 1932; so we conclude that the correct solution of the question raised by counsel for the plaintiff in error in his brief is that the policy was in force at the time of the death of the

insured, whether the $40 note in question can be regarded as a part payment or not.

It is evident from the stipulation of evidentiary facts that the plaintiff in error company never, at any time, had the right to lapse, or avoid, or forfeit the policy during the lifetime of the insured. Taking this view of the matters involved in this controversy, we deem it unnecessary to determine the other questions, which have been raised in the case; and therefore conclude that the court properly found, that the defendant in error had a right to recover under the policy sued on. The judgment is therefore affirmed.

*Judgment affirmed.*